## Case No. 14,475.

UNITED STATES v. ATWILL.

[7 Bett's D. C. MS. 66.]

District Court, S. D. New York. April 14, 1846.

ACTION ON RECOGNIZANCE — INSUFFICIENCY OF DECLARATION—CURE BY PLEA—REARREST OF PRISONER—EFFECT ON SURETY.

[1. A declaration on a recognizance should state that the recognizance was filed in court.]

[2. A recognizance, entered into in a fixed penalty to appear at a circuit court and answer such matters as may be there objected against the party, and not to depart without leave of court, is binding on the sureties, without stating the particular charge on which the party is under arrest, and to which he is to appear.]

[3. The obligation imposed by a recognizance remains valid and operative on the prisoner's release, notwithstanding his detention, after the giving of the recognizance, for the purpose of obtaining additional security, and notwithstanding his subsequent arrest or arrests to compel him to keep the securities good.]

[4. A surety on a recognizance, who binds himself for merely a portion of the total bail, is not released by the fact that the United States retakes the prisoner to compel him to keep good the additional security, though his arrest on a bench warrant on an indictment for the same offense would have that effect.]

[5. In an action on a recognizance, a plea averring that the complement of security was made up, and that the principal was therefore discharged from custody, and that on the same day he was again arrested and imprisoned by the United States on three bench warrants issued on the indictment, is open to the intendment that the bench warrants were enforced to compel better securities, and hence states no sufficient defence.]

[6. Where the breach of the recognizance assigned by plaintiff is that the prisoner did not appear according to the stipulation of the defendant, a plea answering that he was arrested and committed to custody by the plaintiff, after having been released upon the recognizance, is bad as leaving the case open to the intendment that the prisoner did not escape, and was not set at large by the plaintiff, as freed from his arrest.]

[7. Plaintiff is not called upon to reply when the plea does not state what necessarily precludes a recovery by plaintiff.]

[This was an action at law by the United States against William C. Atwill on a recognizance.]

PER CURIAM. The United States demurs to the second plea interposed by the defendant, and the questions raised and discussed upon the pleadings are: (1) Whether a recognizance entered into to appear at a circuit

court and answer such matters as may there be objected against the party, and not depart without leave of the court, is valid, without stating facts showing the matter within the jurisdiction of the officer taking it, and also specifying on what particular charge the party is under arrest, and to which he is to appear. (2) Whether on an order of court to admit a prisoner to bail (committed under seven indictments for perjury) in the sum of $16,000, and the taking of different securities for the amount in aliquot parts thereof, and the failure and insufficiency of some of the bail on their separate undertaking, and the arrest of the prisoner on bench warrants issued on three of the indictments, for the purpose of compelling sufficient bail, the defendant is thereby discharged his engagement on the recognizance entered into by him. (3) Whether the declaration is not defective in substance in not averring that the recognizance was filed in court.

The first and last objections are taken to the declaration, it being argued for the defendant that judgment must be in his favor because of those defects, if his plea is adjudged insufficient. It is not necessary to discuss the last objection, because it is admitted by the plaintiffs that the averment is not made, and by the defendant that the plaintiffs can on motion be allowed to amend their declaration by averring that the recognizance is on file. The substantive defect of the declaration is then supposed to be that it counts on an instrument not valid and obligatory at law, inasmuch as it does not contain any specification of the cause for which Frost. the principal, was under arrest, and for what cause he was bound to appear and answer, and does not allege that the commissioner had competent authority to take it.

Two cases decided by the supreme court of Massachusetts are referred to as deciding the precise point raised by the demurrer in the case. Com. v. Downey, 9 Mass. 521; Com. v. Daggett, 16 Mass. 447. The recognizances in both instances were taken by a justice of the peace, and in Daggett's Case was in substance the same in form as the one declared upon in this cause. The reports of the cases are very concise, but in both the language of the court imports that the recognizances are vitally defective in not setting forth the cause of taking them, and judgment was rendered against the actions on general demurrer. It is by no means made certain by the terms in which the opinion of the court is expressed that the invalidity of the recognizances consisted in not setting forth the accusation or cause for which the party was to appear. In one case the recognizance is pronounced bad, because it does not "recite the cause of its caption," and in the other "that it does not shew the cause of taking it." The supreme court of Maine in reviewing these decisions understood them to turn upon the want of authority in the magistrate, stated upon the recognizances, to take them. They say it is settled law that a recognizance should state the ground on which it is taken, so that it may appear that the magistrate taking it had jurisdiction and authority to demand and receive it. State v. Smith, 2 Greenl. 62 In that case the recognizance set forth the ground of complaint, and to what matter the party was to appear and answer, but was still held void, it not appearing upon the recognizance, and not being avowed in the scire facias, that the magistrate acquired jurisdiction of the subject matter. Id. 63 In some modern elementary works it is asserted that the recognizance should mention the particular crime for which the party is bound over to take his trial (Davis, J., 102; Barbour, Cr. Treat. 504), and such is the purport of the definition given by Chitty (1 Cr. Law, 85). But I find no established doctrine in the English books or the decisions in this state holding such specification to be a cardinal requisite, if the recognizance contains an undertaking to appear and answer generally.

By the ancient English law persons in prison accused of crimes were repleviable only by means of a special writ or mandate issued by the king. 2 Reaves, Hist. & L. 14, 131, 252; 3 Reaves, Hist. & L. 238; Crabbe, Hist. & L. 189; 2 Co. Inst. 190. In such case the writ designated the offence for which the party was detained, and ordered him set at liberty, on sufficient mainpernor to have him in court, &c., to stand to right touching that charge according to the law and custom of the realm. Fitzh. Nat. Brev. 249, G; Id. 250, F; 4 Co. Inst. 178; Hawk, P. C. 132, c. 15, § 82; Stamford, bk. 2, c. 18. Lord Hale, after adverting to the early doctrines of the law concerning bail and main prize and the different forms in which bail was taken, says the true and regular bail is a recognizance in a sum certain, and he gives the form in the original Latin taken from Lambert's Justice. 2 Hale, P. C. 126. The condition of the recognizance was that the prisoner should appear at the next general gaol delivery, then and there to answer the lord the king in the premises, "or," as Lord Hale says, "to answer those things which shall then and there be objected against him," or rather, according to the ancient form, "to stand to the right concerning the (felony) aforesaid." It is plain upon the authority that the recognizances would be complete if the condition was single only; that is, to appear and answer a particular accusation, or to appear and answer those things to be objected against the party. The forms in the older treatises usually embrace the special and general clauses in the condition; that is, that the accused shall appear and answer to a particular charge, and also do and receive what shall be objected to him. Nelson's Justice (1724) p. 75; 1 Shew's Justice, 91; 4 Bun. J. 99; Conducter Generalis, 55. The further clause has also become an usual, if not invariable, part of the condition, that the prisoner shall

not depart without leave of the court. This stipulation it would seem is sufficiently efficient to subserve the purposes of all the special conditions, for it is clear upon the authorities that under it the bail are bound to have the prisoner in court to answer any matter or charge that may be preferred against him, whether included in the cause of his commitment or not. Hawk. P. C. bk. 2, c. 15, §§ 83, 84, 10 Mod. 152; Fortes. 358; 1 Bun. R. 10, 54, 398, 471; 3 Bun. R. 1461; 4 Bun. R. 2326; 5 Davis, Ab. 277, § 2; 5 Davis, Ab. 299, § 29

The supreme court of this state held that clause need not be inserted in the recognizance in respect to the charge on which the prisoner is committed, and that its effect is to detain the party upon the charges which may be exhibited against him. People v. Stager, 10 Wend. 431. The undertaking would therefore be equally complete upon this stipulation alone as on either of the alternatives specified by Lord Hale (2 Hale, 126), for it would be no less stringent and obligatory, standing by itself, than when coupled with other independent conditions. It would be for the bail to object to an obligation so indefinite, as to its terms, and to insist that his liability should be confined to the appearance of the prisoner upon some specific charge; but if he consents to enter into an engagement so broad he cannot escape the consequences because his responsibility has become greater than he intended to make it, and than the prisoner would have been compelled to give, had he objected to it. I am not aware of any authority to compel a prisoner to give security for more than to answer the matters upon which he is under arrest, but the stipulation that he shall abide the order of the court and not depart without its leave is essentially for his own benefit, as without such engagement he would necessarily be committed to close custody on the day of his appearance, and be thus detained until the court ordered his discharge. It appears to me therefore that the recognizance in itself is substantially sufficient to bind the parties. It imposes on them, under a fixed penalty, the condition that Frost shall appear at the next circuit court for the district, and there abide the order of the court, and not depart the court without leave; and within the principle of the cases on this subject that undertaking subjected him to answer any indictment that might be preferred against him by the United States.

The declaration, however, would seem to be defective in two particulars: First, that it does not aver that the recognizance was filed or made of record in the circuit court; and, secondly, it does not allege a case within the jurisdiction of the commissioner, and in which he could legally exact the recognizance. The want of such record is the ground of the first plea, but the objections are also matters of substance, and may be raised by a general demurrer. 9 Mass. 521; 16 Mass. 447: 2 Greenl. 62; 4 Wend. 387. These objections may be removed by amendment, if they are not covered by the special plea interposed by the defendant. The second plea is therefore to be considered in two aspects: First, whether it makes the declaration good by setting forth a competent jurisdiction in the magistrate to take the recognizance, and sufficiently avers the entry of the recognizance in court; and, secondly, whether it alleges matter of legal bar to the action. The second consideration is the essential one, because, as already suggested, any imperfection in the frame of the declaration in respect to the other particulars may be rectified by amendment. The facts asserted by the plea are that seven indictments were presented against Frost in the circuit court of July term, 1842; that he was held in custody on those indictments; that the court ordered him to be held to bail in the sum of $16,000. In pursuance of that order the defendant on the 12th day of August entered into the recognizance for $5,000 now in suit, on the 15th day of the same month Warren Wild entered into a separate recognizance for $10,000, and on the same day John T. Butler entered into one for $1,000, each subject to the same condition as that of the defendant; the principal, Frost, being held in custody of the marshal on the indictment, until the acknowledgment of all the recognizances, when he was discharged from such custody; that after his discharge, and on the said 15th of August, the plaintiff caused Frost to be arrested and imprisoned on three bench warrants issued on the said indictments, or some of them, and he was thereby placed in custody of the marshal upon the said indictments, or some of them, whereby the recognizance of defendant was vacated, annulled, and discharged.

It is not only competent to the court to take bail in different recognizances, but it seems originally to have been the usual method. Lord Coke says at common law, in cases of felony, the sureties are severally bound in a certain sum that the prisoner shall appear, &c. 4 Co. Inst. 178, c. 31. Hawkins says it is the practice of the court to take a several cognizance from each of the bail, in a sum certain to the king. Hawk. P. C. bk. 2, c. 15, § 82. Their undertaking is several and separate, although all appear and acknowledge the recognizance at the same time, and the nature of the undertaking would necessarily be the same, whether concurred in at one time by all the sureties, or they entered into it independent of each other. The full penalty of the stipulation must be paid if the condition is not performed, and neither can require that the burthen shall be taken from him and thrown on another. So also it is clear upon all the authorities that the release of a prisoner on bail carries with it the implication that the surety is adequate to the sum demanded, and, if found insufficient, whether a deceit was intended by the bail or otherwise, the

principal is subject to arrest and detention until he supplies competent bail. Burns, J., Bail; Hawk. P. C. bk. 2, c. 15, § 4. Insufficient securities being regarded in law as no securities. When therefore the recognizance is taken by acknowledgement in court, it would be correct, and probably the true practice, to extend a separate record against each party, it being considered by the supreme court of this state necessary to its validity that the mere minute or memorandum taken by the clerk should be drawn up into a formal record. People v. Rundle, 6 Hill. 506. This would present each surety in the character of a distinct and absolute obligee, according to the terms of his recognizance. It must be obvious also that these sureties, where they all undertake for the same sum, and may thus be regarded in some acceptation as joint obligors, must often enter into the recognizance at different periods of the same day, or on different days, with greater or less intervals of time; so that the obligation may be perfected as to some of the bail before the prisoner furnishes all the security required or can claim his discharge.

The argument so strenuously pressed that the release of the prisoner must be concurrent with giving the recognizance in order to charge the bail with their undertaking cannot therefore be sound. His manucaptors cannot demand his surrender to their keeping until the full condition of his release is complied with by giving security to the amount and by the numbers directed, and yet the obligation of those who have entered into the recognizance is complete in respect to them, even if the public prosecution chooses to waive all other security and throw the whole responsibility on them, and will remain so if the prisoner's imprisonment is protracted by his delay to supply the security ordered, being only suspended, as to its operation, during his being held in custody. The principle from the necessity of the case must be that the obligation remains operative and valid on the prisoner's release, notwithstanding his detention after the recognizance given, for the purpose of additional security, and notwithstanding his subsequent arrest, how often soever it may be, to compel his keeping his securities good. This doctrine applicable to undertakings apparently entered into at one time, and for a common sum by several bail, becomes still more apparent and appropriate when the bail actually come in at different periods, and undertake for different and distinct amounts. In this case, it is to be presumed for the relief of the prisoner and his friends, the court allowed the large sum required for bail, $16,000, to be divided into three sums: $1,000, $5,000, and $10,000. On the 12th day of August the defendant executed his undertaking, and became bail for $5,000, the prisoner then being in custody. Manifestly this must carry with it the implication that the imprisonment was to continue until the residue of the bail was procured. The validity and operation of the recognizance cannot accordingly be regarded as impaired by that fact. The bail proffers his undertaking to the United States in connection with that condition, because the plea avers that the recognizance was given by him in pursuance of the order of the court, and that order, as stated by the plea, was that the prisoner should be discharged on giving bail in $16,000. Although the plea does not assert that the order farther directed the security to be taken in proportions of that sum, it must necessarily be so inferred from the allegations that the defendant gave his recognizance for the distinct sum of $5,000, in pursuance of the order of the court. He assumed then the independent and positive liability to that amount whenever the prisoner should give the security farther required: and the obligation carried with it, as a necessary incident, that the prisoner would be subject to continued and reiterated imprisonments so long or so often as the further security offered by him should be found insufficient. It would accordingly be no acquittance or relinquishment of the objection of the defendant for the United States to retake the prisoner in order to compel his keeping good the additional security. So often as he should be discharged from imprisonment on putting in that security, so often and for such time the liability of the defendant on his recognizance would attach. He would be discharged from the obligation of his liability if the United States subsequently arrested the principal on a bench warrant on an indictment for the same offence, though he escaped from such imprisonment. People v. Stager, 10 Wend. 431. This would be a proceeding not in furtherance of the order to put in sufficient bail, but would be assuming to themselves what had before been delegated to the bail, the possession of the accused, in order to hold him to meet the indictments pending against him.

The plea to avail the defendant then as a bar to his undertaking must show that the United States rearrested the accused, and held him in custody on the charge for which the defendant had become his bail. And his averment must be direct and explicit, so as to leave no ambiguity or ground for implication that the arrest might be for a different cause, or so as not to affect his liability. A cardinal rule in respect to pleas in bar is that the defendant must state his case with its legal circumstances, and if the plea be susceptible of two intendments it shall be taken most strongly against him. 1 Chit. Pl. 522. He must also set forth his case according to the truth. The averment of the plea is that on the 15th of August the complement of security was made up, and the principal was therefore discharged from custody; and that on the same day he was

arrested and again imprisoned by the United States on three bench warrants issued on all the said seven indictments, or on some of them. This is all that is averred in respect to the imprisonment. The court had a right to arrest the accused instantly on his discharge, if it was found that his security was inadequate, and demand fresh securities. Chit. Cr. Law, 100. This re-arrest must necessarily be on the indictments, for they were the authority for holding the prisoner and demanding bail. On this averment, as it stands, the presumption at least is equally as strong that the bench warrants were enforced to compel better securities, as for the purpose of reimprisoning and holding the accused on the indictments. If for the purpose of compelling the bail offered on the day of discharge to be made good, the arrest was not inconsistent with the bail taken of the defendant, and could not operate to annul or vacate it. Indeed, the proceeding would be for the benefit of the defendant, as enforcing further good bail to the amount of $11,000 would tend to his security, and guaranty under his recognizance. His plea should have removed all uncertainty, and not left the case open to an intendment defeating the defence. The bearing of the intendment or presumption is doubtless strengthened by the omission of any averment in the plea that the United States suffered the prisoner to escape and go at large.

To the breach of the cognizance assigned by the plaintiff that the prisoner did not appear according to the stipulation of the defendant the plea answers that he was arrested and committed to custody by the plaintiff, after having been released upon the recognizance. This qualified and restricted method of stating the facts leaves the case open to the intendment that the prisoner did not escape, and was not set at large by the plaintiffs, as freed from his arrest. In People v. Stager, 10 Wend. 431, the plea carefully avers that after the arrest of the prisoner he was arraigned on the indictment, and was afterwards permitted by the court to escape, and go at large. Ordinarily it belongs to the plaintiff to reply matter of avoidance, and such would be the fact that the arrest of the prisoner in this case was to compel fresh securities, and that he was set at large again after having furnished them. But I think he is not called upon to reply when the plea does not state what necessarily precludes a right of recovery on the part of the plaintiff. It has been shown that the United States might lawfully arrest the prisoner for the purpose of additional bail, without impairing the form and obligation of the defendant's recognizances, provided he was again set at liberty on such security; and although the point of pleading is exceedingly strict and technical, and not free of doubt, yet on the whole I am of opinion that it belonged to the defendant to negative the implication or intendment to which his plea is open, and that accordingly it is an insufficient bar to the action.

My opinion accordingly is that the first plea is good, and that the declaration is defective in not averring that the recognizance was filed or made of record in court. The plaintiff will have leave to amend on this point. I am of opinion that the plea makes good the other defect of the declaration, and shows that the court and its officer had jurisdiction of the subject-matter to take bail, and that accordingly the recognizance is legal and valid. I am further of opinion that the second plea furnishes no bar to the action, inasmuch as it does not aver that the prisoner was discharged or permitted to escape by the plaintiff or by the court, nor does it state the facts which prevented his appearing and answering according to the condition of the recognizance. The defendant will also have leave to amend his plea, and no costs are adjudged as against either party.